UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UEL JOE FREEMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV0008 JCH |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Uel Joe Freeman's Petition under 28 U.S.C.

§2254 for Writ of Habeas Corpus by a Person in State Custody, filed December 31, 2008 (Doc. No.

1 ("Motion")). Because this Court has determined that Petitioner's claims are inadequate on their

face and the record affirmatively refutes the factual assertions upon which Freeman's claims are

based, this Court decides this matter without an evidentiary hearing.[1]

## BACKGROUND

The Missouri Court of Appeals summarized the background facts of this case as follows:

> The evidence indicates that on August 28, 2005, Aaron Collins, David Casten,
> Kuron Wallace, Michelle Wieller, and Cody Vaughn were at a residence where both
> [Freeman] and Collins resided, watching television. At some point, Vaughn asked
> Casten for a ride to Wallace's home. Wieller asked Casten if he would also stop by
> her house while he was driving around to pick up a bag and suitcase for her. While
> Vaughn and Casten were at Wallace's house, [Freeman], who had been Wieller's

---

[1]The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) contains "mandatory restrictions barring evidentiary hearings in most federal habeas proceedings" under § 2254. Williams v. Norris, 576 F.3d 850, 859 (8th Cir. 2009) (citing § 2254(e)(2)). "Only if the habeas petitioner 'was unable to develop his claim in state court despite diligent effort' is an evidentiary hearing not barred by § 2254(e)(2)." Id. at 860 (quoting Williams v. Taylor, 529 U.S. 420, 437, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000)). Petitioner received an evidentiary hearing at the state court level and is not entitled to an evidentiary hearing here.

boyfriend until the day before, approached Casten and asked for a ride back to his home, where Wieller was.

Casten, Vaughn, and [Freeman] then drove to pick up Wieller's bags before returning to Wallace's home. After returning to Wallace's home, [Freeman] got out of Casten's vehicle, went to his nearby van, and then returned to Casten's vehicle with two knives and a bag that belonged to Vaughn. [Freeman] got back inside Casten's vehicle in the rear passenger seat and put a knife to the throats of both Casten and Vaughn. Casten testified that when [Freeman] put a knife to his throat he ordered him to take him to where Wieller was. Casten drove [Freeman] to his and Collins' house, where he knew Wieller was located. Casten testified that [Freeman] kept the knife on his throat for the entire drive, then, when they arrived at the house, [Freeman] ordered Casten and Vaughn to stay outside and "not try anything stupid." [Freeman] left the car, went inside, and proceeded to his bedroom. When [Freeman] entered the room, Wieller and Wallace were already inside. At that point, [Freeman], who was standing five to six feet from Wieller "holding" two knives screamed, "If I can't have you, bitch," nobody can have you"; he began to approach her with the knives.

Wallace jumped up from his seat on a nearby bed and placed himself between [Freeman] and Wieller. [Freeman] stabbed Wallace in the arm and the two fell onto the bed. Wieller managed to get one of the knives from [Freeman], but saw [Freeman] stab Wallace again in the torso. [Freeman] ran out of the house, entered the driver's seat of Casten's car, and threw down the knife with which he had stabbed Wallace. [Freeman] was unable to start the car because Casten had removed his keys from the ignition. At that point, Collins and Wallace stumbled out of the house. Wallace aimed a gun at [Freeman], but was unable to fire a shot. [Freeman] then fled.

Freeman v. State, 257 S.W. 3d 186, 187-88 (Mo. Ct. App. 2008).

On December 31, 2008, Freeman filed this Motion seeking relief based upon the following three grounds. Freeman alleged two claims for ineffective assistance of counsel and one claim of actual innocence. The specific bases for Freeman's claims are as follows:

(1)     Freeman's trial counsel was ineffective for failing to call Aaron Collins and Shawn Tutor to testify. (Motion, p. 5).[2]

(2)     Freeman claims that he is actually innocent because he stabbed Wallace in self-defense. (Motion, p. 6). Freeman claims that, at his preliminary injunction hearing, Wallace admitted that he attempted to shoot Freeman, and Freeman stabbed Wallace only after Wallace's gun jammed. (Id.)

---

[2]The Court refers to the pagination provided upon filing in the ECF system.

(3)     Freeman claims that his trial counsel was ineffective because he failed to object when a defense witness was asked on cross-examination regarding alleged hearsay threats made by petitioner.  (Motion, p. 8).

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  "[A]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "'A state court's decision is contrary to … clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision … and nevertheless arrives at a [different] result.'" Cagle v. Norris, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003)).  A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." Ryan v. Clarke, 387 F.3d 785, 791 (8th Cir. 2004). The Supreme Court has emphasized the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions," and has cautioned that § 2254(d)(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Williams, 529 U.S. at 412. "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995).

## DISCUSSION

## I.    Legal Standard for Ineffective Assistance of Counsel

To support an ineffective assistance of counsel claim, a convicted movant must first show "that his counsel's performance was deficient, and that he suffered prejudice as a result." Paul v. U.S., 534 F.3d 832, 836 (8th Cir. 2008) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "Under the first element, there is a 'strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy.'" Toledo v. United States, 581 F.3d 678, 680 (8th Cir. 2009) (quoting Garrett v. United States, 78 F.3d 1296, 1301 (8th Cir. 1996)). The movant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Malcom v. Houston, 518 F.3d 624, 626 (8th Cir. 2008). A reasonable probability is less than "more likely than not," Kyles v. Whitley, 514 U.S. 419, 434 (1995), but more than a possibility. White v. Roper, 416 F.3d 728, 732 (8th Cir. 2005). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law

and fact" subject to *de novo* review. Id. at 698. "The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense." U.S. v. Ledezma-Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005) (citations omitted).

A. **Ground 1**

Freeman claims that his trial counsel was ineffective because he failed to call Aaron Collins and Shawn Tutor as witnesses. Freeman claims that Collins and Tutor would have exonerated him by proving that he acted in self-defense. Freeman's trial attorney asserts that he did not call Collins and Tutor based upon his trial strategy.

1. Aaron Collins

Freeman claims that his trial counsel was ineffective because he did not call Aaron Collins to testify. Freeman believes that Collins's testimony would have supported Freeman's self-defense theory. Collins was present at the time of the stabbing. Freeman claims that Collins would testify that he took "physical possession" of Wallace's pistol during his altercation with Freeman. (Motion, p. 5). Collins also "saw the victim attempt to shoot [Freeman] in the head." (Motion, p. 5).

"Under most circumstances, the choice of witnesses is a matter of trial strategy and will not support a claim of ineffective assistance of counsel." Winder v. State, 151 S.W.3d 413, 417 (Mo. Ct. App. 2004) (citing Helmig v. State, 42 S.W.3d 658, 667 (Mo.App. 2001)). "Trial counsel may be found ineffective for the failure to locate and call witnesses where Movant can demonstrate each of the following: '1) trial counsel knew or should have known of the existence of the witness; 2) the witness could be located through reasonable investigation; 3) the witness would testify, and 4) the

witness's testimony would have produced a viable defense.'" Collins v. State, 226 S.W.3d 906, 912-13 (Mo. Ct. App. 2007) (quoting Hutchison v. State, 150 S.W.3d 292, 304 (Mo. banc 2004)).

Freeman's trial counsel asked Collins to be available for trial. Freeman's counsel, however, made the strategic decision not to call Collins after hearing his deposition testimony. At this deposition, Collins testified that he saw Freeman with two knives in his hands when he entered the bedroom, Freeman was on top of Wallace, that Collins never saw either Freeman or Wallace with a gun in their hands, and that he was in a drug-fogged mental state. Based upon Collins' deposition testimony, Freeman's counsel felt that Collins' testimony at trial would be harmful to the self-defense theory. Although Freeman's counsel had Collins available for trial, he decided not to call Collins to testify as a matter of trial strategy.

Although Freeman claims that Collins's testimony would prove that Wallace acted as the aggressor, the prior testimony of Collins, which was corroborated by other witnesses, actually supported the position that Freeman instigated the altercation. As pointed out by the Court of Appeals, the State had two witnesses, Wallace and Wieller, that testified that Freeman entered the bedroom brandishing the knives. Also, Casten testified that Freeman had the knives described by Wallace and Wieller with him in the car. Freeman testified that he owned the knives described by Wallace, Wieller and Casten. Freeman, however, testified that he did not have the knives when he entered the bedroom but had to make two attempts to retrieve them from between the mattresses.

At an evidentiary hearing, Collins attempted to rehabilitate his testimony to support Freeman's version of the events. The Missouri Court of Appeals found that the discrepancy in Collins's testimony regarding the knives would have been noted by the jury and been detrimental to Freeman's

case. The Court of Appeals held that this detriment to Freeman's case was sufficient strategic basis not to call Collins to the stand. (Doc. No. 1-2, p. 29).

Thus, the evidence before this Court is that Freeman's trial counsel was not deficient in failing to call Collins to testify. "[T]rial strategy decisions, if reasonable at the time, cannot support an ineffective-assistance claim even if, in hindsight, better choices could have been made." Francis v. Miller, 557 F.3d 894, 900-01 (8th Cir. 2009)(citation omitted). Rather, Freeman's counsel made the tactical decision not to have Collins testify based upon Collins's deposition testimony, the testimony of other witnesses and his theory of the case. Collins's testimony that he saw Freeman enter the bedroom with the knives would have supported the prosecution's, not the defendant's, version of the altercation. See Davis v. Booker, 589 F.3d 302, 309 (6th Cir. 2009) (petitioner was not prejudiced by the failure of his attorneys to procure prejudicial testimony from a witness). Freeman's ineffective assistance of counsel claim fails because Freeman has not shown that "counsel's decision involved something other than reasonable trial strategy and that the witness's testimony would have provided the defendant with a viable defense." Francis, 557 F.3d at 901 (citation omitted); Strickland, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

        2.     Shawn Tutor

Freeman claims that his trial counsel was ineffective because he did not call Shawn Tutor to testify. Freeman believes that Tutor's testimony would have supported Freeman's self-defense theory. Freeman claims that Tutor "saw the fight start, saw the victim hit [Freeman] in the head with

his pistol, saw the victim trying to kill [Freeman] before [Freeman] defended his life." (Motion, p. 5).

Freeman's counsel claims that he chose not to call Tutor as a matter of trial strategy. Freeman's counsel testified that he spoke with Tutor via telephone and also issued a subpoena for Tutor to appear at trial. Freeman's counsel had Tutor on standby to testify depending on the testimony of the State's witnesses.

The evidence before this Court indicates that Freeman's trial counsel was not deficient in failing to call Collins to testify. See Francis, 557 F.3d at 900-01. Trial counsel testified that he chose not to use Tutor because his story did not fit in with his self-defense theory of the case, because of Tutor's substantial prior convictions, and because of Tutor's prior relationship with Freeman. Tutor has prior convictions for theft of anhydrous ammonia and possession of a controlled substance. Freeman's counsel was concerned that Tutor would be viewed as biased because Tutor had a long-term relationship with Freeman and referred to him as "Uncle Joe." Tutor testified that, after Wallace and Freeman started talking, Freeman told Tutor to leave because "things might get a little hairy right here." (Doc. No. 1-2, p. 25). Freeman's trial counsel reasonably concluded that Tutor's proposed testimony did not support his theory of the case. Freeman's counsel worried that Tutor's testimony that Freeman came to the house knowing that there would be trouble was contrary to his theory of self-defense. Freeman's counsel also felt that Tutor's testimony was not necessary because Tutor was not present for the actual stabbing and counsel felt he had impeached all of the State's witnesses who contradicted each other. The Missouri Court of Appeals held that Freeman's counsel was "more worried about [Freeman] being impeached than he was concerned about countering Wallace" and his testimony that there was a gun in the house (Doc. No. 1-2, p. 26). The Court "must resist the temptation to second-guess a lawyer's trial strategy." Laws v. Armontrout, 863 F.2d 1377, 1393

(8th Cir. 1988). Under the standard in <u>Strickland</u>, Freeman cannot succeed on his ineffective assistance of counsel claim because he chose not to call Tutor as part of his reasonable trial strategy.

In summary, "[t]he Court of Appeals agreed with the post-conviction trial court that counsel only failed to call witnesses who would not provide a defense, were not credible, or could not reasonably be located; and that counsel was reasonable in not attacking 'each and every piece of evidence put forth by the state' and in not calling witnesses who would corroborate the State's theory. The state courts' decision was neither contrary to nor an unreasonable application of federal law, as established in <u>Strickland v. Washington</u>." <u>Helmig v. Kemna</u>, 461 F.3d 960, 967 (8th Cir. 2006). The Court concludes therefore that the state court's rejection of Freeman's claim in Count I was not "contrary to" and did not involve "an unreasonable application of clearly established Federal law, as determined by the Supreme Court," and was not based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

**B.    Ground 3**

In Ground 3, Petitioner claims that his trial counsel was ineffective for failing to object to alleged hearsay statements about threats Freeman made. Freeman claims that the hearsay statements were prejudicial because they were harmful to his defense strategy.

The alleged hearsay statements occurred during the testimony of Charles Huitt, Cody Vaughn's stepfather. Vaughn did not testify at Freeman's trial. During the cross-examination of Huitt, the prosecutor elicited the following testimony,

Prosecutor:    Were you aware that [Freeman] threatened Cody Vaughn?

Huitt:    I heard about it, yes.

Prosecutor:    Cody is not here today, is he?

Huitt:    No, sir.

Trial counsel did not object to this exchange, nor did he object during the prosecution's closing argument, which included the following:

> His own witness knew about a threat against Cody Vaughn by [Freeman]. And [Freeman] also threatened the Prosecutor Kevin Barbour. He has this thing about threatening people.
> ...
> Cody is not here. Couldn't be found. But, you got to remember this trial is full of people threatening people. [Freeman's] own witness says I heard that Cody had been threatened by who? [Freeman]. Yes.

At the evidentiary hearing, Freeman's trial counsel testified that he believed that Huitt's testimony regarding the threats was not hearsay because they were presented by the State and he believe that they were admissible as a party admission. (Respondent's Exhibit M, p. 6). Trial counsel, however, admitted in hindsight that Huitt did not identify the person from whom he had heard that Freeman was threatening Vaughn. Trial counsel testified that Vaughn was present at Freeman's house earlier in the day but left before the altercation with Wallace. Trial counsel did not know whether Huitt heard Freeman's threats towards Vaughn. Trial counsel, however, noted that other threats made by Freeman had been admitted during the trial, including a written threat made by Freeman towards the prosecuting attorney.

The Missouri Court of Appeals determined that trial counsel exercised sound discretion "not to highlight the statements" by objecting at trial. (Respondent's Exhibit M, p. 6). The Court of Appeals held that objecting to Huitt's statements would only have emphasized another threat by Freeman.[3] The motion court and the Court of Appeals held that "[w]hether trial counsel did not

---

[3]Although Freeman claims that it is a foregone conclusion that Huitt's testimony was hearsay, the Court of Appeals made it clear that the record did not clearly determine if the testimony was hearsay. Citing approvingly to the motion court's finding that "[a]lthough the statement of a threat may have been hearsay, and stricken upon objection and motion; yet, if the issue had been further developed, it may not have been hearsay." (Respondent's Exhibit M, p. 6).

object because of trial strategy or inadvertence, the testimony and argument did not result in a substantial deprivation of [M]ovant's right to a fair trial."  (Respondent's Exhibit M, p. 6).

The Missouri Court of Appeals also determined that, even if the statements were objectionable, there was no prejudice to their admission.  The Court noted that the jury heard of several threats made by Freeman and, therefore, the admission of Huitt's statements were not prejudicial because they were merely cumulative.  (Respondent's Exhibit M, pp. 6-7).  Casten, the state's first witness, told the jury details about Freeman's threats, including how Freeman put a knife to Casten's and Vaughn's throats in the car.  (Respondent's Exhibit M, p. 7).  The jury also heard testimony regarding Freeman's threats to other people, including the prosecutor.  Therefore, Huitt's testimony was merely cumulative and not prejudicial.  See Lathrop v. Dinwiddie, 317 Fed. Appx. 842, 845 (10th Cir. 2009) (denying habeas relief where hearsay statements were cumulative and thus harmless); United States ex rel. Bomkamp v. McGann, No. 06 C 4473, 2007 U.S. Dist. LEXIS 54138, at *21-22 (N.D. Ill. Jul. 24, 2007) (officer's hearsay testimony that two rival gangs did not get along was cumulative of other evidence and did not state a basis for granting habeas relief); see also Sherley v. Commonwealth, 889 S.W.2d 794, 796 (Ky. 1994) ("Even if subject to review, the complained of alleged hearsay evidence was merely cumulative, and there is no substantial possibility that the result would have been any different.").

The Court concludes therefore that the state court's rejection of Freeman's claim in Count II was not "contrary to" and did not involve "an unreasonable application of clearly established Federal law, as determined by the Supreme Court," and was not based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

## II.     Ground 2--Actual Innocence/Lawful Self-Defense

Freeman claims that, during his October 20, 2005 Preliminary Hearing, "the victim Kuron Wallace admitted to hitting Petitioner in the head with his gun, pulling the trigger between petitioner[']s eyes twice and his gun jammed before Petitioner stabbed the victim[.]" (Motion, p. 6). Freeman asserts that these admissions were "caught on the court reporter[']s audiotape and public defender[']s audiotape at the preliminary hearing October 20, 2005."  (Motion, p. 6).

In support of this claim, Freeman cites to the transcript he made of his Preliminary Hearing. (Doc. No. 1-2, pp. 1-2).  According to Freeman, Wallace identified himself as the aggressor in the following exchange:

Attorney:[4]          Where did Joe stab you at Kuron?

Wallace:              He stabbed me in the upper left arm, the upper left chest, boy, that was a good one.  He wouldn't pull the knife out of me until he looked around and made sure there wasn't a gun there.

Freeman:             Your [sic] a lying son of a bitch you hit me in the head with your pistol, pulled the trigger between my eyes twice.  I didn't find out until last night that your gun jammed.

Wallace:              How does he know the gun jammed, he was locked-up!

Judge:                Mr. Freeman sit down and shut up before I have you escorted from this Courtroom, and we will conduct this preliminary hearing without you.  Do you understand me?

Freeman:             Sorry Sir!

(Doc. No. 1-2, pp. 1-2).

---

[4]Freeman's attorney at the preliminary hearing was Anthony Mulenkamp.  (Doc. No. 1-2, p. 2).

Petitioner claims that this exchange demonstrates that Wallace tried to kill Freeman by shooting him in the head but that the gun jammed. Freeman believes that if he can obtain this transcript then it will demonstrate his actual innocence and that he acted in self-defense.

Initially, Respondent asserts that Petitioner defaulted on this claim because he did not exhaust this claim in state court. In his first motion for post-conviction relief, Freeman alleges that the audiotape from the preliminary hearing provided exculpatory information. (Respondent's Exhibit J, p. 6). Freeman, however, failed to raise the audiotape issue in his amended motion for post-conviction relief. (Respondent's Exhibit J, p. 31) (listing claims for post-trial relief). Freeman later asked the post-conviction court to consider the audiotape issue (Respondent's Exhibit L, p. 47), but the court held that it was precluded from hearing that issue because the amended motion superseded Freeman's initial pro se motion. (Respondent's Exhibit J, p. 44). The court only considered the issues included in Freeman's amended motion, filed on June 5, 2007, which was within the ninety days after the filing of the last transcript, and timely under Rule 29.15(g). (Id.)

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). "If the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar, a federal habeas court is precluded from reviewing the claim." Oglesby v. Bowersox, No. 09-1864, 2010 U.S. App. LEXIS 1986, at *5 (8th Cir. Jan. 29, 2010) (citations omitted). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by [a federal court] of a federal

constitutional claim." Ford v. Georgia, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991) (quoting James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 80 L. Ed. 2d 346 (1984)). "Missouri courts consistently hold that the time limits in Rule 29.15(g) are valid and mandatory. Oglesby, 2010 U.S. App. LEXIS 1986, at *5 (citing cases). Freeman abandoned his argument pertaining to ground one of the instant petition during the hearing on his motion for post-conviction relief. For these reasons, the Court holds that Petitioner is procedurally barred from bringing this claim. See Oglesby, 2010 U.S. App. LEXIS 1986, at *5 (" Because the postconviction court did not have jurisdiction to review Oglesby's untimely conflict-of-interest claim, the court of appeals held it had no jurisdiction to review the claim on the merits.").

"Where a claim is defaulted, a federal habeas court will consider it only if the petitioner can establish either cause for the default and actual prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice." Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (citing McCall v. Benson, 114 F.3d 754, 758 (8th Cir. 1997)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "This exception requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." Abdi, 450 F.3d at 338 (citations omitted).

In the procedural default context, the "actual innocence" gateway is satisfied where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 327 (1995). "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt--or, to remove the double negative, that more

likely than not any reasonable juror would have reasonable doubt." House v. Bell, 547 U.S. 518, 538 (2006); Schlup, 513 U.S. at 329. "[T]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup, 513 U.S. at 324.

Freeman alleges that the audiotape from the preliminary hearing constitutes newly discovered evidence of actual innocence. This Court disagrees. Initially, there is evidence that Freeman was aware of this audiotape during his state court proceedings below but that he abandoned those claims. Thus, this evidence does not fit into the actual innocence exception because Freeman was aware of this evidence and knowingly defaulted in bringing this claim.

In addition, Freeman has failed to persuade this Court that, in light of this "new evidence," no reasonable juror would have voted to find him guilty beyond a reasonable doubt. Assuming that the audiotape of the preliminary hearing reflects the transcript made by Freeman, the evidence demonstrates only that Wallace's gun jammed. Under both parties' theories, Wallace's gun jammed; the only difference is the timing of when Wallace's gun jammed. Freeman claims that Wallace's gun jammed while it was pointed at Freeman's head during their altercation. The State and its witnesses claim that Wallace's gun jammed when he followed Freeman out of the house. The jury had opportunity to consider both of these theories and chose to believe the latter. This "new" evidence does not affirmatively demonstrate that Freeman is innocent of the crimes for which he was convicted.

Moreover, the witnesses, Wallace, Wieller and Collins that were present in the room during the altercation testified that Wallace did not have a gun when Freeman stabbed Wallace.[5] This testimony undermines the reliability of Freeman's purported "new" evidence. The Court finds that, even in light of the "new" evidence, a reasonable jury could find Freeman guilty of the crimes for

_____

[5]At deposition, Collins admitted that he never saw Wallace with a gun until after Wallace was stabbed. (Respondent's Exhibit M, pp. 9-10).

which he was convicted. Accordingly, this Court will deny Freeman's actual innocence claim in Count II.

### III.   Miscellaneous Motions

Throughout this case, Freeman has filed various motions collateral to his §2254 claim.

#### A.   Jurisdictional Defect

Freeman filed two motions alleging Jurisdictional Defects (Doc. Nos. 23, 36). In his first motion (Doc. No. 23), Freeman claims that Judge Mark Richardson, who presided over Freeman's trial, did not have jurisdiction to re-sentence Freeman because Freeman requested a change of judge.

In his second motion (Doc. No. 36), Freeman claims that because his trial and sentencing Judge, Mark Richardson, resigned from the bench that he was not afforded a fair trial. In support of this claim, Petitioner cites to some unsubstantiated comments on a blog about Judge Richardson's resignation.

The Court finds Petitioner has not provided any basis for a finding of a jurisdictional judge defect, nor has he properly raised these claims. Freeman failed to raise these issues in his original habeas motion and he failed to obtain permission from the Eighth Circuit to file a second or successive motion pursuant to 28 U.S.C. §2255(h). Freeman's motions are denied.

#### B.   Discovery

Freeman filed a Motion Under Rule 5 (Doc. No. 24) seeking Respondents to produce (1) audiotapes of the October 20, 2005 preliminary hearing, (2) the letter of complaint filed on February 28, 2008, (3) "ineffective state Missouri public defender appellate counsel filed March 24, 2008," (4) a copy fo the Motion to Recall the Mandate, Vacate Judgment or Redocket Case for Rehearing from the 29.15 Appeal on July 25, 2008, and (5) "a copy of the pro se amended 29.15 filed February 23, 2007."

Along the same lines, Petitioner filed several Motions for Leave of Court to File for Discovery (Doc. No. 30, 31, 39, 48, 49). In Doc. Nos. 30 and 31, Petitioner asked the Court to order Respondent to produce the audiotapes of his preliminary injunction hearing. Petitioner claims he needs these audiotapes to prove his theory of self-defense. In Doc. Nos. 39 and 49, Petitioner seeks discovery of phone calls between Petitioner and his ex-girlfriend Michelle Wieller that were recorded while Petitioner was incarcerated. Petitioner claims he needs these records to disprove the state's witness's testimony that these calls did not take place. Specifically, Petitioner claims that these conversations contradict Wieller's testimony at trial and are consistent with Petitioner's claim that Wallace hit Petitioner in the head with his pistol prior to Petitioner stabbing Wallace. (Doc. No. 49-2). In Doc. No. 48, Petitioner seeks "for the Respondents to produce from the Assistant U.S. Attorney Keith Sorrell and the A.T.F. the actual Smith and Wesson 9mm Pistol that the alleged victim [and] x-fellon Kuron Wallace tried killing Petitioner with before Petitioner stabbed the victim upon Petitioner's bed."[6] Petitioner seeks production of the actual weapon because Wallace and Wieller denied at trial that Wallace had the pistol. Petitioner believes that Wallace's DNA will be on the pistol.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). "[D]iscovery is available only in the discretion of the court and for good cause shown." Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999); Bracy, 520 U.S. at 903 (a petitioner is required to show "good cause" for discovery to prove his claim under 28 U.S.C. § 2254 Rule 6(a)). Where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be

---

[6]Similarly, in Doc. No. 41, Petitioner filed a Motion to Bring Forth New Evidence, which seeks "the actual Smith & Wesson 9mm pistol that the alleged victim tried killing Petitioner with before Petitioner stabbed the alleged victim."

able to demonstrate that he is entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry. Bracy, 520 U.S. at 908-909 (consistent with Harris v. Nelson, 394 U.S. 286, 299 (1969)).

The basis for Petitioner's proposed discovery does not satisfy the requirement for "good cause." Rather, these requests relate to issues that, even if developed, would not entitle Freeman to relief. First, as discussed earlier, Petitioner has not shown that the testimony that Petitioner believes is on the audiotape from his preliminary hearing will change the trial result. According to Petitioner, Wallace only admitted that his gun jammed. The state's witnesses also testified that Wallace's gun jammed when Wallace attempted to follow Petitioner out of the house after Petitioner stabbed Wallace. Contrary to Petitioner's claim, Wallace did not admit that the gun jammed while he was striking Petitioner at close range. Thus, the Court finds that there is no showing of good cause sufficient to warrant discovery.

Likewise, the Court does not believe that Petitioner has demonstrated good cause sufficient to warrant discovery of his jailhouse telephone conversations with Wieller. None of the other witnesses present for the altercation between Petitioner and Wallace testified that they saw Wallace hit Petitioner. Therefore, the Court finds that even if Wieller's jailhouse statements are as Petitioner claims, then they would not be credible, given the numerous contradictory statements.

Finally, Petitioner has not shown good cause for production of the actual 9mm Smith & Wesson pistol allegedly used in the altercation. Petitioner's main basis for seeking the pistol is that it may have the DNA of Wallace (or even Petitioner) on it from their altercation. This altercation occurred on August 28, 2005. According to Petitioner, the gun was sold to a third party after the altercation. Sometime thereafter, the pistol was recovered by law enforcement. The Court cannot fathom that any DNA from 2005 is still present on the weapon. As this is Petitioner's sole basis for

seeking discovery of the weapon, the Court finds that Petitioner has not shown good cause for discovery. In addition, discovery on this claim is barred because Petitioner failed to develop a factual record on this claim in state court. See 28 U.S.C. §2254.

Finally, under 28 U.S.C. §2254(e)(2), Petitioner did not develop a factual record in state court regarding this discovery, which bars him from raising this claim here. See Goldsby v. Czerniak, 142 Fed. Appx. 303, 304 (9th Cir. 2005) ("The magistrate judge did not abuse his discretion in denying Goldsby's Rule 6(a) motion for leave to subpoena and depose Gray and Allen because Goldsby could have developed a factual record in state court but failed to do so.") (citing 28 U.S.C. §2254(e)(2)).

C.    Leave to Assert Claim

Petitioner filed a Request for Leave of Court to Assert Claim Abandoned by Post-Conviction Counsel (Doc. Nos. 28, 29). Therein, Freeman sought leave of the Court to assert the claim that Kuron Wallace, the victim, was a confidential informant for the Drug Enforcement Administration. Freeman acknowledged that this claim was abandoned by post-conviction counsel. This Court denies Freeman's Motion for leave to assert this claim and the "32 other claims abandoned by post-conviction counsel." Freeman failed to raise these claims in his original habeas motion and he failed to obtain permission from the Eighth Circuit to file a second or successive motion pursuant to 28 U.S.C. §2255(h). Freeman's Request for Leave of Court to Assert Claim Abandoned by Post-Conviction Counsel is denied.

D.    Motion to Apply Senate Bill 62

Petitioner filed a Motion to Apply Senate Bill 62 Retroactive [sic] (Doc. No. 38). Therein, Freeman asked the Court to retroactively apply a Missouri state law that purportedly expanded the

"castle doctrine" to Petitioner's case.  Freeman failed to raise this issue in his original habeas motion and he failed to obtain permission from the Eighth Circuit to file a second or successive motion pursuant to 28 U.S.C. §2255(h).  This Motion is denied.

     E.     Motion for Appointment of Legal Investigators and Forensic Experts

In Doc. No. 42, Petitioner claims he needs the assistance of forensic experts to try and detect Wallace's DNA on the 9mm Smith & Wesson pistol that was "soaked" with Wallace's blood during his altercation with Petitioner.  "A request for an expert is a discovery request[.]"  <u>Cornwell v. Bradshaw</u>, 559 F.3d 398, 420 (6th Cir. 2009).  As previously noted, "discovery is available only in the discretion of the court and for good cause shown."  <u>Rich</u>, 187 F.3d at 1068; <u>Bracy</u>, 520 U.S. at 903.

As discussed herein, Petitioner seeks additional discovery regarding blood on a weapon for a crime that occurred close to five (5) years ago.  After the crime, the weapon was taken by a witness and sold to a third party.  According to Petitioner, the weapon was recovered by the government.  Freeman has provided no information regarding whether there are any DNA or other genetic materials on the weapon.  Given the multiple people who possessed the weapon and the delay in its recovery, the Court finds that it is unlikely that there is any DNA available on the weapon, and Petitioner has failed to demonstrate good cause for discovery on this issue.  Petitioner's Motion for Appointment of Legal Investigators and Forensic Experts is denied.

     F.     Motion to Bring Forth Violation of the Confrontation Clause Pertaining to the New Evidence

In Doc. No. 44, Petitioner appears to be arguing that trial counsel was deficient for failing to subpoena Cody Vaughn to testify.  Petitioner claims that Vaughn was in the Bloomfield County Jail

at the time of the trial. Petitioner claims that Vaughn possessed Wallace's pistol and shotgun after the altercation, which Vaughn later sold. Freeman failed to raise these claims in his original habeas motion and he failed to obtain permission from the Eighth Circuit to file a second or successive motion pursuant to 28 U.S.C. §2255(h). Freeman's Motion to Bring Forth Violation of the Confrontation Clause Pertaining to the New Evidence is denied.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Uel Joe Freeman's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834, 119 S. Ct. 89, 142 L. Ed. 2d 70 (1998).

**IT IS FURTHER ORDERED** that all remaining pending motions in this case are **DENIED**.

Dated this 11th day of February, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE